# Terry *v.* The State.

*Indictment for Murder.*

1. *Change of venue; what affidavits considered on hearing motion.*—
    Where, after the reversal of a judgment of conviction, the defendant in a criminal case files a motion for a change of venue, only those affidavits in support of said motion, which relate to

[Terry v. The State.]

the condition of the public mind against the defendant after the reversal and prior to and at the time of hearing the motion can be considered.

2. *Same; when properly refused.*—Where the affidavits filed in support of the motion for a change of venue do not state the affiants' knowledge of the condition of the public mind in regard to defendant, but simply state what some other person or persons had told the affiants that they had heard, and there is an entire absence of proof in the affidavits as to an inimicable sentiment against the defendant beyond a few people, and as opposed to the granting of the motion the affidavits introduced state that the affiants had talked with a great many people from all portions of the county, had heard many expressions as to the defendant, and that in their opinion he could obtain a fair trial in the county, there is no error in overruling the motion and refusing to grant a change of venue.

3. *Witness; when refusal to issue attachment for absent witness proper.*—Where it is shown that a material witness for the defendant is sick and unable to attend court, there is no error in the refusal of the court to issue an attachment for such witness, at the instance of the defendant.

4. *Same; when continuance properly disallowed.*—Where the State admits the showing made by the defendant as to what an absent witness, who is shown to be sick and unable to attend court, would testify, if present, a motion for a continuance, made by the defendant on account of the absence of said witness, is properly refused.

5. *Evidence; to what witness can testify.*—On a trial under an indictment for murder, it is competent for a witness, who, a short time after the killing, examined the wounds inflicted on the deceased, to testify "that the flesh moved and it appeared that the skull was broken or crushed; it gave way and moved about easily."

6. *Charges to the jury* are properly refused when they invade the province of the jury.

7. *Homicide; charges to the jury.*—On a trial under an indictment for murder, which charges that the deceased was killed by being struck with some weapon to the grand jury unknown, where the testimony showed that the death was caused by a blow inflicted on the deceased's head, and there was also testimony of marks upon the throat of the deceased, as if he had been choked; a charge is properly refused which instructs the jury that if they "believe from the evidence that the death of the deceased was produced by the combined effect of the choking and a blow struck with a weapon, they must find the defendant not guilty."

8. *Same; same.*—On a trial under an indictment for murder, where the defendant introduced evidence tending to show that his general character for peace and quiet was good, a charge is properly refused, which instructs the jury that if they "believe that the defendant's character for peace and quietude is good they must consider his character in determining his guilt or innocence, as a circumstance in favor of his innocence, even though they believe his character for truth and veracity bad "

9. *Homicide; indictment; fact of averment as to weapon being unknown to grand jury.*—An indictment for murder, which charges that the deceased was killed by being struck with some weapon to the grand jury unknown, is sufficient to sustain a conviction, even though the weapon used could have been ascertained by reasonable diligence; and a charge which so instructs the jury asserts a correct proposition of law.

APPEAL from the Circuit Court of Coffee.

Tried before the Hon. J. W. FOSTER.

The appellant, Major Terry, was tried under an indictment which charged him with unlawfully and with malice aforethought killing "Mary Thomas by striking her with some weapon to the grand jury unknown," was convicted of murder in the first degree and sentenced to be hanged.

When the cause was called for trial, the appellant made application to the court for a change of venue. The grounds of this application are sufficiently stated in the opinion. Upon the hearing of the application, the court overruled it and refused to allow the change of venue, and to this ruling the defendant duly excepted. Thereupon the State announced ready, but the defendant announced that he was not ready for trial on account of the absence of several witnesses, among whom was one Dr. Grubbs; and the defendant submitted a sworn statement as to what he expected to prove by each of these witnesses, and asked for an attachment for each of them. The court ordered attachments returnable instanter for all of the witnesses, with the exception of Dr. Grubbs. In reference to this witness, it was shown that he was sick and unable to attend court. Thereupon the court declined to issue an attachment for Dr. Grubbs, and defendant excepted to this action of the court. The court then put upon the State the admission of the showing made by the defendant as to what the witness Dr.

[Terry v. The State.]

Grubbs would testify, which showing the State admitted. The defendant objected to being put to trial in the absence of said witness, and moved the court for a continuance of the cause on account of his absence. The court overruled the motion, declined to allow a continuance, and to this ruling the defendant duly excepted.

It was shown that Mary Van Thomas had been killed; that when her body was found it was discovered that she had received a severe blow on her head, fracturing her skull, and there were marks upon her throat as if she had been choked. The State introduced evidence tending to show that the defendant had inflicted the wounds upon the deceased, which resulted in her death.

Upon the examination of one Mrs. Crumpler, a witness for the State, she testified that she went to the house of the deceased a short time after she was killed, and while there she examined her. That there was a large gash on the left side of her head, and all along the left side of her head there were bruises; "that the flesh moved and it appeared that the skull was broken or crushed; it gave way and moved about easily." The defendant separately objected and moved to exclude the sentence quoted above, upon the grounds that it was irrelevant and immaterial evidence, and that the statements were the mere conclusion or expression of the opinion of the witness. The court overruled this motion and the defendant duly excepted. There was no definite evidence as to what was the instrument with which the blow producing the death of the deceased was inflicted, but it was shown that the blow upon the head was sufficient to produce death.

The testimony for the defendant tended to show that he was not guilty of the offence charged. He introduced evidence proving that his general character for peace and quiet was good.

Upon the introduction of all the evidence, the court at the request of the solicitor for the State, gave to the jury the following written charge: "If the grand jury had proof of and knew the weapon employed whereby the deceased was killed, then it was necessary to a valid indictment, that such weapon be named therein; but if the weapon was unknown to the grand jury such aver-

ment was sufficient, even if it could have been ascertained by reasonable diligence." The defendant duly excepted to the giving of this charge, and also separately excepted to the court's refusal to give each of the following charges requested by him : (1.) "If the jury believe the evidence, they must acquit the defendant." (2.) "If the jury believe from the evidence that the death of the deceased was produced by the combined effect of the choking and a blow struck with a weapon, they must find the defendant not guilty." (3.) "If the jury believe that the defendant's character for peace and quietude is good, they must consider his character, in determining his guilt or innocence, as a circumstance in favor of his innocence, even though they believe his character for truth and veracity bad."

No counsel marked as appearing for appellant.

CHARLES G. BROWN, Attorney-General, for the State. The application for a change of venue was properly refused.—*Hawes v. State*, 88 Ala. 37.

The court properly ruled upon the evidence objected to by the defendant, and in giving the charge requested by the State.—*Terry v. State*, 118 Ala. 79.

TYSON, J.—The facts averred by defendant in his application for a change of venue, were, that on the day after the alleged murder with which he was charged, he was given a preliminary hearing and bound over to await the action of the grand jury ; that about night of that day a mob was formed and began to make demonstrations indicating a disposition to take him from the custody of the constable, who had him in charge, and kill him, when he made a dash and escaped to the woods pursued by some of the persons composing the mob. Afterwards searching parties were organized to apprehend him, without avail. Just prior to the next term of the circuit court he surrendered and was imprisoned in the jail of another county. That after his trial was finished and while the jury were considering their verdict, a large crowd of enraged persons gathered about the court house and threatened to kill him, should the jury

acquit him. That he was convicted and sentenced to death, from which judgment he appealed to the Supreme Court, but on the day fixed by the court for his execution, a large crowd of people gathered in Elba, and when informed of his appeal and the sheriff had the day before taken him to another county, another mob formed and threatened to go after him, take him from the officers of the law and kill him. That since the reversal of his case by the Supreme Court there has been ''expressions to the effect that he has put the county to expense enough and ought to be killed and the county rid of him.'' That after it became known that he would apply for a change of venue ''he has learned of various threats that if the change of venue was granted a mob would be formed to take his life and not allow him again to go from the county. And he alleges that the public sentiment in the county is such that he cannot get a fair and impartial trial in this county from the facts aforesaid.''

Before entering upon a consideration of the affidavits offered by defendant in support of this application and those by the State in opposition, it will be well to note that his preliminary examination was had the 14th day of July, 1897, that his trial and conviction was on September 10, 1897, that the judgment of reversal by this court was on the 23d day of June, 1898, and this application was filed the 6th day of September, 1898.

The defendant filed the affidavits of seven persons which may be grouped into four classes—two relate exclusively to the facts as alleged in the application as to the demonstrations made by the crowd on the day of the preliminary examination; two relate to what took place during the day fixed for his execution; one recites that one DuBose, a few days after the reversal, told affiant that the county had been put to enough expense by the defendant, and that he was in favor of the citizens of the county taking him and killing him, and that he knew others of the same opinion; and the two others recite that certain persons named, had told each of the affiants, that they had heard, that day, several persons, whose names are not stated, talk of hanging defendant if a change of venue was granted.

Under the principles declared in the case of *Hawes v. The State*, 88 Ala. 37, only the two last mentioned affida-

vits could have had any influence in determining the question presented by the application.

It is worthy of note that the persons making each of these affidavits do not state their knowledge of the condition of the public mind in regard to the defendant, but simply what some other person had told them that he had heard. Whether the sentiments inimicable to the rights of the defendant to have a fair trial, were expressed by kins-people or partisan friends of the deceased or her family is not shown. To what extent this sentiment prevailed, beyond a few persons, there is an entire absence of proof. But conceding that the affidavits show there existed at one time some bitterness'of feeling toward defendant throughout the county, the affidavits introduced by the State clearly show that it did not exist at the time of this trial. These affidavits were made by the sheriff, probate judge, county treasurer and a justice of the peace, in which it is stated that they have talked with a great many people of the county and from all portions of the county, and heard many expressions made by many people; and that in their opinion the defendant could obtain a fair trial. There was no error committed by the court in refusing the application. *Hawes v. State*, 88 Ala. 37, *supra*.

There was no error in the refusal of the court to issue an attachment for witness Dr. Grubbs at the instance of the defendant. He was shown to have been sick and unable to attend court. Neither was there error in the action of the court in overruling the defendant's motion for a continuance on account of his absence, since the defendant had the benefit of his testimony in a showing introduced in evidence by him.

It was competent for the witness Mrs. Crumpler to testify that "the flesh moved and it appeared her skull was broken or crushed."—*Evans v. State, ante* p. 269, and authorities there cited.

The other exceptions reserved to the rulings of the court upon the admission of evidence are so wanting in merit that we will not discuss them.—*Terry v. State,* 118 Ala. 79.

The three charges refused to the defendant each invaded the province of the jury and were properly refused.

[Linnehan v. The State.]

The written charge given at the request of the solicitor was proper.—*Duvall v. State*, 63 Ala. 12.

There is no error in the record and the judgment is affirmed. The day fixed by the court below for the execution of the sentence of death pronounced against the defendant having passed, it becomes our duty to specify a day for his execution. It is accordingly ordered and adjudged that on Friday, 17th day of March, 1899, the sheriff of Coffee county execute the sentence of the law, by hanging the defendant, the said Major Terry, by the neck until he is dead, in obedience to the judgment and sentence of the circuit court of Coffee county, as herein affirmed.