# Williams *v.* The State.

## *Murder.*

(Decided June 7th, 1906.   41 So. Rep. 992.)

1. *Criminal Law; Appeal; Presumptions.*—The indictment was preferred at a special term of the court held on May 22nd, 1905. In another county in the same circuit, the statute required that the court begin in regular session on May 15th, 1905. There is an absence of evidence as to whether the court in the other county in the same circuit was in session or had adjourned. Under such a state of facts, it will be presumed on an appeal from a conviction had at a trial at such special term that the regular term of the circuit court in the certain other county of the circuit was adjourned at the end of the first week of its session preceding the commencement of the special term.

2. *Criminal Law; Appeal; Record; Review.*—The ruling of the circuit court sustaining demurrers to pleas which is not shown by the record proper, but only by bill of exceptions, are not reviewable on appeal.

3. *Courts; Simultaneous Terms.*—The regular circuit judge may hold special terms during the session of a regular term of court in his circuit, under Sections 928 and 930, Code 1896.

4. *Criminal Law; Change of Venue; Order of Judge.*—The ex parte order of the Judge issued to a sheriff of another county ordering him to retain possession and custody of the defendant was not a judicial ascertainment that there was danger of violence to the defendant if placed in the jail of the county where the crime was committed, on the issue of facts presented by a petition for a change of venue, because of prejudice on the part of the inhabitants of the county where the crime was committed.

5. *Jury; Service; Excuse.*—The court has authority in a criminal case to excuse a juror on account of his wife's condition demanding his personal attention.

[Williams v. The State.]

6.  *Criminal Law; Evidence; Non Expert Testimony.*—A non expert
    witness on pistol or gun shot wounds may testify that a wound
    made by a bullet was a penetrating one, if he had examined
    the same.

7.  *Homicide; Evidence; Writ of Possession.*—Where the evidence
    showed that the deceased and an officer were attempting to
    execute a writ of possession against defendant when the killing
    occurred, the writ was admissible, even in the absence of direct
    proof that the lands described in the writ were the lands on
    which defendant resided and from which he was sought to be
    ejected, there being evidence affording an inference as to that
    fact.

8.  *Criminal Law; Evidence; Res Gestae.*—Declarations of the ac-
    cused made while at the scene of the killing in the presence
    of the body of deceased, with a pistol still in his hands, are
    admissible as part of the res gestae without regard to proof
    that they were voluntary.

9.  *Same; Expert Testimony.*—An expert is entitled to express his
    opinion as to where the bullet which produced deceased's death
    entered his head.

10. *Same; Res Gestae; Continuous Transactions.*—Evidence of the
    details of what occurred at the time of the killing, constitut-
    ing as it does one continuous transaction, is admissible as res
    gestae.

11. *Homicide; Evidence; Threats.*—Where the killing occurred dur-
    ing an attempt to eject defendant from certain premises, it
    was permissible to show that a year before the killing defend-
    ant told witness he had decided not to give up the possession
    of the property, and if they came to put him out, he or they
    would die before they would get it.

12. *Witnesses; Impeachment; Predicate.*—An impeaching question
    was properly disallowed which was foreign to the matter laid
    in the predicate.

13. *Criminal Law; Instructions; Failure to Charge; Appeal; Review.*
    —A request orally to have the court instruct the jury on the
    law of self defense and an exception reserved to the failure
    or refusal of the court to do so, presents no question for review
    on appeal.

14. *Same; Instructions; Modification.*—At the defendant's request,
    the court in writing instructed that unless each and every mem-
    ber of the jury was convinced beyond all reasonable doubt of
    the defendant's guilt, under the evidence in the case, they
    should not convict him; and, that unless every juror believed
    beyond all reasonable doubt that defendant killed deceased
    by shooting him with a pistol, within the county, before the

[Williams v. The State.]

finding of the indictment, and that such killing was wilful and deliberate and premeditated and malicious, the defendant could not be found guilty of murder in the first degree. The court added that the first instruction simply meant that the jurors must all agree on the verdict, and that all twelve must agree before they could return any verdict, and that the second instruction simply meant that all the jurors must agree on the elements of murder in the first degree. Held, not error

15. *Homicide; Instructions.*—A charge asserting that the necessity that would justify the taking of human life need not be actual, but the circumstances must be such as to impress on the mind of the slayer a reasonable belief that such necessity was impending, is objectionable, in not postulating that the circumstances were such as to reasonably impress, and did impress, the defendant with the belief that he was in great and imminent peril.

16. *Same; Defense of Habitation.*—As against persons attempting to eject defendant under a lawful writ of possession, the rule that a person is entitled to defend his habitation even to the taking of life when invading the same, has no application.

17. *Criminal Law; Instructions; Refusal.*—The court will not be put in error for refusing instructions substantially covered by instruction given.

18. *Homicide; Self Defense; Misleading Instructions.*—The evidence being such that the jury might have found that the defendant deliberately shot deceased after the officer had begun to run, an instruction that if the officer presented his pistol at defendant in a threatening manner, and defendant was free from fault in bringing on the difficulty, defendant had the right under the law, to shoot at the officer in self defense, which right was not limited to cases of necessity, real or apparent on account of danger to life or limb, but extended equally to the danger of great bodily harm, was misleading and properly refused.

19. *Criminal Law; Argumentative Instructions.*—An instruction asserting that the jury should view the testimony of a witness in the light of the fact that the defendant had shot at witness at the time of the killing, was argumentative and properly refused.

APPEAL from Cullman Circuit Court.

Heard before HON. D. W. SPEAKE.

The defendant was indicted, tried and convicted for the murder of R. L. Hipp. The indictment was preferred and the trial had at a special term of the Cullman circuit court held by order of the presiding judge of the Eighth

judicial circuit. The killing is alleged to have occurred on the 11th day of April, and the order for the special term was made the 18th day of April, 1905, calling the special term to convene on May 22, 1905. The defendant moved a change of venue upon the grounds that on account of public sentiment and the fact that the defendant was a poor, obscure ,and unknown man, and the deceased a prominent and influential man, the defendant could not get a fair and impartial trial. Numerous affidavits were offered for and against the motion. The order of the court calling the special term was attempted to be offered in support of the motion, as was also the order of the court removing the prisoner from the Cullman jail to the Madison count jail. The newspaper account of the killing and of the history of the parties connected therewith, together with their account of the state of public feeling, was also offered. The court overruled the motion and put the defendant upon the trial. In selecting the jury, one Wright was called and examined under oath, pronounced competent by the court, and accepted by both state and defendant as a juror; but before he was sworn in, he stated on oath that his wife's condition was such as absolutely to demand his presence and attention, whereupon the court excused him, and the defendant excepted. Dr. R. H. Beard testified that he saw the body of Hipp the night of the day he was killed, and that there were wounds upon it, one under the eye and one in the back of the head; the last-named one being a penetrating wound, entering from the back of the head just above the right ear and a little back of it. The defendant objected to the statement on the ground that the witness was not shown to be an expert. The evidence tended to show that Deputy Sheriff Dunlap, together with Hipp and others, had gone out to the house of Williams; the deputy sheriff having in his possession a writ of possession issued from the circuit court against Williams to remove him from the possession of the house and lands he was then occupying. That Hipp was the attorney for the plaintiff in the writ and was there to receive the possession of the house and land from the deputy sheriff. The state offered to introduce this writ of possession in evidence, but the

defendant objected, and the court overruled the objection.

The assignments of error referred to in the opinion are as follows: "(12) In overruling appellant's objection to the solicitor's question to witness Woodruff, 'You asked Williams where the others were,' and in holding 'The predicate is sufficient.' (13) In overruling appellant's motion to exclude statement of witness Woodruff that 'they all got away but him, and he was not able;' said expression being attributed to defendant. (14) In overruling the defendant's objection to the solicitor's question to the witness Woodruff: 'Was there anything said about where he was hit or anything of that sort—about where the ball hit him? * * * (16) In overruling defendant's objection to solicitor's question to witness Ascue, 'what did you hear Williams say?"

The witness Woodruff testified as follows: "I was at Williams' house after the tragedy. When I got there, I saw Hipp lying with his feet upon the veranda and his face toward the ground. He was shot. Williams was walking in the back yard about ten steps from the porch and near the well with a pistol in his hand. Mr. Hall came up and asked Williams where were the rest of them, and Williams said they all got away but 'that one, and he is hardly able to get away.' Williams was about ten steps from Hipp's body when I saw him." Witness then testified that he did not threaten Williams; that he had no gun, stick, or pistol, and did not promise Williams anything, nor offer him anything, to tell what had occurred, nor tell him that it would be better to tell something about the matter. "No one took hold of Williams. Gober did not threaten him or promise him anything or make any demonstration against him." The solicitor asked the witness: "You asked him where the others were?" There was objection to this question, but the court held the predicate sufficient, and overruled defendant's objection. The defendant also moved the court to exclude the statement that Williams said that all got away but deceased, and he was not able, on the grounds that it was not a part of the res gestae, and that a proper predicate for its admission had not been laid. Witness testifying

further, said: "I washed Mr. Hipp's face." The solicitor then asked: "Was anything said there about where he was hit, or anything of that sort—about where the ball hit him?" Defendant objected to the question as leading and irrelevant, and the court overruled the objection. Witness Noah Holmes testified that he was present at the time of the shooting; that he went to the house with Dunlap, Hipp and others. He further testified that while there he heard a report of a gun in the house; that he heard another report, and then saw Dunlap come out the door and turn to the left as he came out and run to the end of the porch, and then "Williams came to the door just as Dunlap went to jump off the porch, and Williams shot at him. Dunlap kept on around the house and Williams turned to the right and ran out in the yard and shot at Ryan." The solicitor asked, "Where was Ryan?" and the witness replied: "He was at the buggy where I was, and was running. Williams shot at Ryan, and, as well as I remember, turned to the right and ran to the gate that goes to the lot at the back end of the house and went around the house again." The defendant objected to all this testimony separately, but the objection was overruled. Ryan's testimony was of similar import. Newman testified that he knew Williams and had a conversation with him about a year before the date of his testimony, in which Williams said to him that he had decided not to give possession of his place, and that if they came out there to put him out, "he or they would die before he would get out." Ogletree was asked the following questions by the defendant: "I want to ask you whether or not W. T. Giles stated to you on Saturday following the shooting on Tuesday that he was there on the porch when the shooting occurred and saw the hand of the man from the door of the west room, and he never saw the man and never saw the man come in the room?" The state objected because no predicate had been laid. Giles in his previous testimony had stated, that he was in the hall and saw only the hand and pistol of the man who did the shooting; that he could not see the man himself on account of the door facing.

At the conclusion of the testimony, the defendant requested a number of written charges, some of which were given, and some of which were refused. Charge B was given as follows: "Unless each and every member of the jury is convinced beyond all reasonable doubt of the guilt of the defendant from the evidence in the case, then you should not convict him." At the time he gave this charge, the court said: "That simply means, gentlemen of the jury, that you must all agree upon your verdict." Charge E: "Unless each and every juror is convinced beyond all reasonable doubt from the evidence in the case that the defendant killed Robert L. Hipp 'by shooting him with a pistol in this county, before the finding of this indictment, and that such killing was willful and deliberate and malicious and premeditated, you cannot find the defendant guilty of murder in the first degree." In giving this charge, the court said: "As I said before, all 12 of you must agree before you can return any verdict. This charge is to be taken and construed with the charge I have already given you, and it simply means that all of you must agree upon the elements of murder in the first degree before you can find the defendant guilty of murder in the first degree." Charge C: "The necessity that will justify the taking of life need not be actual, but the circumstances must be such as to impress the mind of the slayer with a reasonable belief that such necessity is impending." Charge D: "A man is not required to retreat from his own house before he strikes himself. Charge F: "The law regards with great jealousy and vigilance the peace and security of the dwelling house. A trespass upon it is more than a trespass upon property. It is a trespass upon the person." Charge G: "A man's house is his castle, and he may defend it, or himself in it, without retreating." Charge H: "The court charges the jury that, if the killing was the consequence of passion suddenly aroused by sufficient provocation, the jury cannot convict the defendant of murder in the first degree." Charge I: "If the jury believe from the evidence that Dunlap presented his pistol at the defendant in a threatening manner, and the defendant was free from fault in bringing on the difficulty, then the defendant

[Williams v. The State.]

had a right under the law to shoot at Dunlap in self-defense." Charge J: "In weighing the testimony of the witness Dunlap, the jury will consider the fact that he was shot by the defendant at the time of the alleged killing." Charge K: "The right of one in self-defense is not limited to cases of necessity, real or apparent, on account of danger to life, but extends equally to the danger of great bodily harm." Charge L: "Unless the evidence against the defendant is such as to exclude to a moral certainty every supposition or hypothesis but that of his guilt, you will find the defendant not guilty."

ERLE PETTUS, for appellant.—Change of venue is guaranteed by the constitution. Refusal to grant is revisable on appeal.—§ 5309, code 1896. In this case the motion for change of venue should have been granted.—*Hussey v. The State*, 87 Ala. 121; *Seams v. The State*, 84 Ala. 410; *Thompson v. The State*, 117 Ala. 17; 4 Ency. P. & P. 397.

The term of the circuit court of the 8th judicial circuit was regularly in session in Madison county, a county in said circuit, at the time the special term of the Cullman circuit court was called and held that returned the indictment in this case. The motion to quash the indictment, therefore, should have been sustained.—§ 906, code 1896; *Davis v. The State*, 48 Ala. 80; *Archer v. Ross*, 3 Ill. 303; 11 Cyc. pp. 729, 730, 735. The court should have quashed the venire because of the omission of Ogletree's name from the venire.—§ 5005 code 1896.

On account of the inflamed state of public opinion and under the facts submitted to the court, the defendant's motion for a continuance should have been granted.—*Huskey v. The State*, 129 Ala. 94; *White v. The State*, 86 Ala. 69. The court below erred in excusing the juror, Wright.—*Phillips v. The State*, 68 Aal. 469; *Boggs v. The State*, 45 Ala. 30; *Sullivan v. The State*, 102 Ala. 135.

The witness Beard was not shown to be an expert, and objection to his testimony as to the character of the wound should have been sustained.—*Rash v. The State*, 61 Ala. 89; 1 Greenleaf, 440. The writ of possession was

improperly admitted.—*McCormack v. The State*, 102 Ala. 161; *Thompson v. The State*, 20 Ala. 54. The question to the witness, Woodruff, clearly called for a confession, and in the absence of the predicate, objection thereto should have been sustained.—*Redd v. The State*, 59 Ala. 255; *Young v. The State*, 68 Ala. 569; 1 Mayfield p. 204. The testimony of Holmes as to what defendant did after the shooting and the fact that witness heard two shots after the killing were not part of the res gestae, and should have been excluded.—*Garrett v. The State*, 76 Ala. 18; *Fonville v. The State*, 91 Ala. 39. The question to the witness, Ryan, "Where did you go," and his answer thereto should have been excluded.—*Fonville v. The State, supra; Thompson v. The State, supra; Tate v. The State*, 86 Ala. 33; *Moulton v. The State*, 88 Ala. 116. Allen's statement should have been excluded.— *Walker v. The State*, 58 Ala. 393; *Davis v. The State*, 17 Ala. 415. No sufficient predicate had been laid for the introduction of the confessions testified to by Hall.— *Redd v. The State*, 69 Ala. 255; *Amos v. The State*, 83 1; *Brister v. The State*, 26 Ala. 107; *Mann v. The State*, 36 Ala. 211. The statement of the witness, Hall, as to the caliber of the shells was a mere opinion and should have been excluded.—*Busby v. The State*, 77 Ala. 66; *McKee v. The State*, 82 Ala. 32; *Riley v. The State*, 88 Ala. 193. The threat testified to by Newman should have been excluded.—*Jones v. The State*, 76 Ala. 15; *Ford v. The State*, 71 Ala. 385; *Myers v. The State*, 62 Ala. 599. The defendant's question to the witness, Ogletree, should have been allowed.—*Tesney v. The State*, 77 Ala. 37.

The court erred in explaining and qualifying written charges B and E.—§ 3328, code 1896; *Lewis v. The State*, 96 Ala. 6. Under the evidence in this case the question of self-defense arose and should have been subimtted to the jury.—*Story v. The State*, 71 Ala. 329; *Rogers v. The State*, 62 Ala. 170; *Oliver v. The State*, 17 Ala. 587.

If assaulted in his own home, defendant was under no duty to retreat.—*Martin v. The State*, 90 Ala. 602; *Harris v. The State*, 96 Ala. 24. The appellant had the right to infer that the deceased was aiding and abetting Dunlap, and it is inferable from the evidence that the bullet

that killed the deceased was aimed at Dunlap. Hence, the doctrine of self-defense was applicable.—*Amos v. The State*, 83 Ala. 1; *Tidwell v. The State*, 70 Ala. 33; *Clarke v. The State*, 78 Ala. 474; *Bob v. The State*, 29 Ala. 20. Charge C should have been given.—*Oliver v. The State*, 17 Ala. 587; *Carrol v. The State*, 23 Ala. 28. So should charge D.—*Martin v. The State*, 90 Ala. 602; *Harris v. The State*, 96 Ala. 24. Charge F should have been given. —*Crawford v. The State*, 112 Ala. 1. So should have charge G.—*Askew v. The State*, 94 Ala. 4; *Brinkley v. The State*, 89 Ala. 34. Charge H was proper.—*Smith v. The State*, 83 Ala. 26; *Ex parte Sloan*, 95 Ala. 23. Charge I was improperly refused.—*Oliver v. The State*, 17 Ala. 587; *Compton v. The State*, 110 Ala. 24; *Rogers v. The State*, 62 Ala. 170. Charge J was improperly refused.—*Jones v. The State*, 76 Ala. 8; *Polk v. The State*, 62 Ala. 137. Charge K should have been given.— *Knowles v. The State*, 26 Ala. 31; *Holmes v. The State*, 23 Ala. 17. Charge L was improperly refused.—*Joe v. The State*, 38 Ala. 423.

MASSEY WILSON, Attorney General, GEORGE H. PARKER and JOHN A. LUSK, for the State.—The application for change of venue was properly refused.—§ 5309 code 1896; *Salm v. The State*, 89 Ala. 56; *Hawes v. The State*, 88 Ala. 37; *Seams v. The State*, 84 Ala. 410; *Byers v. The State*, 105 Ala. 38; *Terry v. The State*, 120 Ala. 286; *Lyde v. The State*, 133 Ala. 64; *Jackson v. The State*, 104 Ala. 1; *Daughdril v. The State*, 113 Ala. 7; *Hussey v. The State*, 87 Ala. 125; *Thompson v. The State*, 122 Ala. 12; *Rains v. The State*, 88 Ala. 91. The court called a special term for the trial of this cause.—30 A. & E. Ency. Law, pp. 512-13, note 4; *Sam v. The State*, 31 Miss. 485. The fact that there was a conflict between the special term and a regular term of the court in another county cannot render the proceedings void.—§§ 928 and 930, code 1896; *Daughdrill v. The State*, 113 Ala. 7; *Knight v. The State*, 116 Ala. 486. There was no good grounds for quashing the venire.—§ 5007, code 1896; Authorities next above. The fact that some of the jurors were not summoned is not good ground for quashing the venire.—

28 So. Rep. 617. Motion for continuance is addressed to the sound discretion of the court.—5 Mayfield, p. 203. The court may excuse a juror for good cause after he has been accepted and sworn and even after the introduction of evidence.—*Yarbrough v. The State,* 105 Ala. 43; *Webb v. The State,* 100 Ala. 47; *Hawes v. The State,* 88 Ala. 37; *Sanford v. The State,* 39 So. Rep. 371. There is no merit in the objection to the testimony of Beard as to the character of the wound.—*Littleton v. The State,* 128 Ala. 37; *Bush v. The State,* 61 Ala. 89; 1 Mayfield, p. 340; 5 Mayfield, p. 985.

The evidence in reference to the presence of the officers there, their purpose and authority is best illustrated by the process in their hands, hence the evidence relative to the process and the process itself were admissible.— 1 Elliott on Evidence, § 312; Wharton on Homicide, p. 205; 21 A. & E. Ency. Law, (2nd Ed.) pp. 142-44.

It is elementary that all the surroundings and circumstances attending the killing, the declarations of the accused at and after the killing and his conduct at and after the killing while at or near the scene are admissible and form part of the res gestae.—*Hainsworth v. The State,* 136 Ala. 13; *Rolan v. The State,* 105 Ala. 41; *Youngblood v. The State,* 114 Ala. 697; *Carroll v. The State,* 23 Ala. 28.

A non-expert may testify as to the appearance of wounds.—*Pitts v. The State,* 140 Ala. 70; *Thomas v. The State,* 139 Ala. 80; *Terry v. The State,* 118 Ala. 80. The court was under no duty to charge on the doctrine of self-defense in the absence of written requested instructions on self-defense.—*Green v. The State,* 98 Ala. 14. The court's explanation of charges B and E was proper. —*Holmes v. The State,* 136 Ala. 80; *Jackson v. The State,* 1b. 22; *Wilson v. The State,* 140 Ala. 43. Charge C was properly refused.—*McClellan v. The State,* 140 Ala. 99. Charges D, F, and G were abstract and properly refused.—*Ex parte Smotherman,* 140 Ala. 168; *Floyd v. The State,* 82 Ala. 16; *Teague v. The State,* 120 Ala. 309; *Dryer v. The State,* 139 Ala. 117; *Williams v. The State,* 44 Ala. 41. Charge L was bad for omitting the qualifying word reasonable.—*Bowen v. The State,* 140 Ala. 65.

[Williams v. The State.]

TYSON, J.—The indictment upon which this defendant was tried and convicted was preferred by a grand jury organized at a special term of the court after notice that the court would be held had been given in conformity to the statutes.—§§ 914 and 915 of the code of 1896. The trial was also had at that special term.

The regularity of the order convening the court is assailed in only one particular. It is upon the point that the judge of the Eighth judicial circuit, who ordered the special term, and who presided over it, was without authority to hold it because he was at that date bound to. be in attendance upon a regular session of the circuit court, in and for Madison county, which was in the same circuit with Cullman county, where this special term was being held. It is true the statute fixing the time for holding the regular term of the Madison circuit court requires that court to convene on the third Monday in May (and may continue four weeks) which, in the year 1905, was the 15th day of that month, and it is also true that the record shows this special term to have been convened on the 22nd day of that month; but it was not shown by evidence introduced in support of the motion to quash the indictment that the Madison court did not adjourn on the Saturday, the end of the first week of its session, preceding the commencing of the special term. It will not be seriously doubted that the judge may have properly exercised the authority that he had to adjourn the Madison court, and, in the absence of a showing to the contrary, it must be presumed that he exercised that authority properly, since error must be affirmatively shown.—*Smurr v. State*, 105 Ind. 125, 4 N. E. 445. The same question was also attempted to be raised by pleas to which a demurrer was sustained. But these pleas and the demurrer to them are made to appear here only in the bill of exceptions. This ruling of the court is therefore not revisable.—*Beck v. West*, 91 Ala. 312, 9 South. 199; *Brooks v. Rogers*, 101 Ala. 125, 13 South. 386, 3 Brickell's Dig. p. 456, § 13. But, aside from these considerations, the judge had ample authority to order the special term and hold it at the time it was held, although the Madison court may have been in session.

We do not controvert the general doctrine that a court cannot be held at a time when there is clearly no authority to hold it; nor do we impugn the general rule that it is error to hold two courts in the same circuit at the same time where there is no statutory authorization for it. To see that such authority is conferred by our statutes we need only cite them.—§§ 928 and 930 of the code of 1896; Gen. Acts 1898-99, p. 236. The legislative provisions made in these statutes for the holding of regular terms by the supernumerary judge and special judges appointed by the governor clearly recognize the authority, and, indeed, impliedly, if not expressly, confer such authority on the circuit judge to hold special terms during the session of a regular term of the court.

After a careful examination of the evidence offered in support of and against the motion for a change of venue, we feel constrained to hold that it cannot be affirmed that the trial judge erred in denying the motion. It seems to us that the evidence in support of the application is much less convincing than was that in the *Hawes Case,* where the application was held to have been properly denied (*Hawes v. State,* 88 Ala. 39, 7 South. 302), and does not measure up to that in the *Thompson Case,* 117 Ala. 67, 23 South. 676, where it was held that the application should have been granted.—*Terry v. State,* 120 Ala. 286, 25 South. 176; *Thompson v. State,* 122 Ala. 12, 26 South. 141; *Daughdrill v. State,* 113 Ala. 7, 21 South. 378 . The order of the presiding judge of date April 15, 1905, commanding the sheriff of Madison county to retain the custody of the defendant as a prisoner, was not a judicial ascertainment of the fact that there was danger of lawless violence to him if removed to or placed in the jail of Cullman county as against the state on the issue of fact presented by the application for a change of venue. It was purely an ex parte order, made without a hearing on the part of the state, and therefore was not binding as a judgment. To hold that it was a judicial determination of that fact or any other fact recited in it would vitiate the cardinal principle above referred to necessary to the efficacy of every decree or judgment. And, clearly, it is no more a judicial

determination of that fact than it is of the further fact also recited in it that the jail of Cullman county was insufficient for the keeping of the prisoner.—§ 4961 of the code of 1896. The purpose of such orders is to protect the sheriff as an authorization to hold the prisoner and to prevent the latter's escape or to guard him against violence to his person. The order under consideration is clearly entitled to no more weight as evidence than an affidavit containing the same statements would be. The overruling of the motion to quash the venire is not insisted on as erroneous. But, if it was, it would clearly be without merit.—*Fields v. State*, 52 Ala. 348.

The trial court was authorized to excuse the juror Wright on account of his wife's condition which demanded his personal attention.—*Parsons v. State*, 22 Ala. 50; *Hawes' Case, supra; Yarbrough v. State*, 105 Ala. 43, 16 South. 758; *Sanford v. State*, (Ala.) 39 South. 370.

It does not require that a witness should be an expert on gunshot wounds in order to testify that a wound examined by him, made by a bullet, is a penetrating one. Nor is there any merit in the other objection interposed to the question propounded by the solicitor to Dr. Beard; or in the exception reserved to the ruling on the motion to exclude that witness' statement as to the range of the wound found by him in the head of Hipp, the deceased.— 3 Mayfield's Dig. p. 965, § 235.

The only objection urged against the introduction of the writ of possession which Hipp, the deceased, and the deputy sheriff was attempting to execute, at the time of the homicide, is that there is no evidence in the record tending to show that the lands described in the writ are the same as those upon which the defendant resided and from which they were attempting to eject him. It is true there was no positive or direct proof of this fact offered, but the evidence affords an inference from which the jury may have inferred it. The writ was clearly relevant and competent.—1 Elliott on Ev. § 212; Wharton on Homicides, § 235, p. 205; 21 Am. & Eng. Ency. Law (2d Ed.) pp. 141-144.

The matters made the basis of the twelfth, thirteenth, fourteenth, and sixteenth assignments of error, relating as they do to the conduct and declarations of defendant while at the scene of the killing with his pistol in his hand and in the presence of the deceased, being attendant circumstances, were a part of the *res gestae* of the occurrence or transaction that took place on that occasion, and were therefore competent without preliminary proof being made showing his declarations on that occasion to have been voluntary.—4 Elliott on Evidence, § 3029, and cases cited in notes. But aside from this consideration, the circumstances under which they were made repel all presumption that they were not voluntarily made.—*Gilmore v. State,* 126 Ala. 20, 36, 37, 28 South. 595, and cases there cited. This also disposes of the fifteenth, twenty-sixth, twenty-seventh, and twenty-eighth assignments of error adversely to appellant.

Dr. Stone was shown to be an expert. He was therefore competent to express his opinion as to the place of entrance on Hipp's head of the bullet that produced his death.

The testimony of witnesses Holmes and Ryan admitted by the trial court against defendant's objection was clearly competent. All of it related clearly to matters which were a part of the *res gestae* of the occurrence on the occasion of the homicide. Indeed, all the details of what occurred on that occasion were entirely competent as constituting one continuous transaction.—*Collins v. State,* 138 Ala. 57, 34 South. 993; *Churchwell v. State,* 117 Ala. 124, 23 South. 72; *Smith v. State,* 88 Ala. 73, 7 South. 52; *Scams v. State,* 84 Ala. 410, 4 South. 521.

The threats by defendant testified to by the witness Newman were clearly competent.—*Jordan v. State,* 79 Ala. 9; *Ford v. State,* 71 Ala. 385; 4 Elliott on Ev. § 3035.

The question propounded to the witness Ogletree, to which an objection was sustained, was not competent. If answered, it would not have tended to impeach Giles upon the matter laid in the predicate for his impeachment. In short, it was outside and foreign to the matter laid in the predicate. But, aside from this, the question was clearly otherwise objectionable.

There are a number of other assignments of error, but they are so obviously without merit that we have not deemed it necessary to discuss them.

After the testimony had closed, and before the trial judge delivered his oral charge to the jury, the defendant in writing requested that he charge fully on the law of self-defense. It is also stated in the record that the judge failed in his oral charge to instruct the jury upon the law of self-defense. The exception reserved was to his failure or refusal to do so. Pretermitting all discussion of the question whether, under any phase of the testimony, the defendant was entitled to have the jury determine that he was justified in shooting at Dunlap, whom Hipp accompanied for the purpose of having the possession of the premises delivered to him as the agent of the plaintiff named in the writ, and conceding that defendant was so entitled, the exception reserved is unavailable to raise the question. Had the judge instructed the jury in his oral charge or a written charge had been given at the request of the solicitor asserting that defendant was not justified or excused, and an exception had been reserved to the oral charge, or if special charges had been requested by defendant raising the question of his justification or excuse and refused, then undoubtedly the ruling could be reviewed. But here we have a mere nondirection by the judge—a mere failure or refusal to instruct the jury orally upon a certain conceived phase of the testimony. This is wholly ineffectual to present for revision the question sought to be reviewed.—§§ 3326 and 3328 of the code of 1896; *Herbert v. Huie,* 1 Ala. 18, 34 Am. Dec. 755; *Green v. State,* 98 Ala. 14, 13 South. 482; 2 Thompson on Trials, § 2341. Mr. Thompson, in the section above cited, speaking to this point, says: "It is, then, a general rule of procedure, subject in this country to a few statutory innovations, that mere nondirection, partial or total, is not a ground of new trial, unless specific instructions, good in point of law and appropriate to the evidence, were requested and refused."

Th court's explanations of charges B and E were not improper.—*Holmes v. State,* 136 Ala. 80, 84, 34 South.

180; *Jackson v. State,* 136 Ala. 22, 34 South. 188; *Nqvill v. State,* 133 Ala. 99, 32 South. 596.

Suffice it to say of charge C, refused defendant, that it was faulty in not postulating that the circumstances were such as to reasonably impress him, and did so impress him, that he was in great and imminent peril.— *McClellan v. State,* 140 Ala. 99, 103, 37 South. 239.

Charges D, F, and G were calculated to mislead the jury, if not otherwise bad. The rule of habitation does not apply when the person killed has the lawful right to be in the dwelling of his slayer for the purpose of executing a writ of possession. The writ in this case armed those executing it with the right to the possession of the dwelling to eject the defendant and his household goods from it. They were in no sense trespassers, nor were they committing an unlawful act in their attempt to dispossess him and to place the owner of it in possession.— Harrigan & Thompson's Cases on Self-Defense, pp. 713, 720, 900-904; 25 Am. & Eng. Ency. Law (2d Ed.) p. 278.

Charge H was a duplicate of charge 4 that was given for defendant.

Charges I and K were each calculated to mislead the jury. There was testimony from which they were authorized to find that defendant deliberately shot Hipp after Dunlap had begun to run.

Charge J was a mere argument. Charge L was correctly refused.—*Bowen v. State,* 140 Ala. 65, 67, 37 South. 233.

Affirmed.

WEAKLEY, C. J., and SIMPSON and ANDERSON, JJ., concur.