(94 South. 59)

### HALL v. STATE. (8 Div. 408.)

(Supreme Court of Alabama. June 22, 1922.
Rehearing Denied Oct. 12, 1922.)

**1. Criminal law ⟨key⟩51—Emotional insanity constituting merely moral obliquity no excuse for crime.**

Emotional insanity constituting nothing more than moral obliquity does not excuse crime.

**2. Homicide ⟨key⟩166(1)—Letters from defendant to deceased held admissible to show motive.**

In prosecution for murder of woman with whom defendant had been unduly intimate, defended on the ground of insanity under Code 1907, § 7176, letters from defendant to deceased in which defendant accused deceased of being the cause of his misfortunes, his profound depression, and his moral and financial bankruptcy, and in which defendant showed a desire to break away from the deceased and to keep his relations with her under cover, and to keep her from coming to the town in which he lived, held admissible to show a motive.

**3. Criminal law ⟨key⟩412(3)—Conduct and declarations of defendant relevant when shedding light on motives and intention of defendant in doing act complained of.**

The conduct and declarations of the defendant on other occasions are relevant whenever such conduct and declarations tend to shed light on his motives and intention in doing the act complained of.

**4. Criminal law ⟨key⟩386—Testimony as to telephone conversation between defendant and deceased held admissible.**

In prosecution for murder of woman with whom defendant had been unduly intimate, telephone operator's testimony as to telephone conversation between defendant and deceased a minute or two before the killing, during which defendant told deceased, who was in a drug store across the street from his place of business, to come over to his place of business, where the defendant thereafter shot her, held admissible to prove motive and to show preparation for the killing.

**5. Witnesses ⟨key⟩196—Telephone operator's testimony as to telephone conversation competent notwithstanding statute denouncing publication or communication of contents of message.**

A telephone operator's testimony as to conversation between defendant and deceased was competent, notwithstanding Acts 1915, p. 321, making it a criminal offense for an operator to publish or communicate the contents of any message without the consent of either the sender or receiver, in view of proviso making such provision inapplicable when "such information is called for by any writ or summons from any court."

**6. Homicide ⟨key⟩165—Evidence as to conduct of defendant and deceased tending to show undue intimacy held admissible to establish the relations between the parties.**

In prosecution for murder of woman with whom defendant had been unduly intimate, testimony as to conduct of defendant and deceased while seated in defendant's automobile tending to show undue intimacy held admissible to show the relations between the parties.

**7. Homicide ⟨key⟩165—In prosecution for murder of woman with whom defendant had had illicit relations, testimony as to defendant's wife and children held admissible.**

In prosecution for murder of woman with whom defendant had been unduly intimate, testimony as to defendant's wife and children held admissible to show the true inwardness of the relations between the defendant and the deceased, though cumulative and unnecessary.

**8. Homicide ⟨key⟩174(8) — Conversation between deceased and defendant immediately after shooting held admissible to show defendant's animus and hostility.**

In prosecution for murder of woman with whom defendant had been unduly intimate for a period of time, in which there was evidence tending to show that defendant was trying to break away from deceased and to cover up his relations with her, testimony that a few minutes after the shooting, while deceased lay upon the sidewalk, the defendant said to deceased, "I told you not to come here or I would kill you," and that deceased repeatedly asked defendant to get a doctor and not let her die, held admissible to show defendant's animus and hostility toward deceased.

**9. Homicide ⟨key⟩174(8)—Testimony as to defendant's statement relative to disposition of deceased immediately after shooting held admissible to show his mental attitude toward her.**

In prosecution for murder of woman with whom defendant had been guilty of illicit relations, testimony that defendant immediately after the shooting, while the deceased was lying on the sidewalk, said, "Get her away from here before my folks get down here," held admissible to show defendant's mental attitude toward the deceased.

**10. Criminal law ⟨key⟩364(3)—Testimony as to statements made immediately after shooting held admissible as part of res gestæ.**

In homicide prosecution, testimony as to statements made immediately after the shoot-

ing while deceased was lying on the sidewalk and defendant stood by with the weapon in his hand *held* admissible as part of the res gestæ.

**11. Homicide ⬤═190(3)—Exclusion of evidence showing a threat by deceased held not error where no evidence tending to support plea of self-defense had been offered.**

In murder prosecution, exclusion of evidence claimed to show a threat on the part of deceased was not error where no evidence tending to support the plea of self-defense had been offered.

**12. Homicide ⬤═163(2) — Evidence that deceased used morphine held inadmissible.**

In prosecution for murder of woman with whom defendant had been guilty of illicit relations, defended on the ground of insanity, evidence that the deceased habitually used morphine, or that she was under the influence of morphine at the time of the killing, *held* not admissible since such evidence was not relevant to the issues and offered no excuse for the killing of the deceased.

Appeal from Circuit Court, Franklin County; Charles P. Almon, Judge.

Fred Hall was convicted of murder in the first degree and he appeals. Affirmed.

Travis Williams and W. L. Chenault, both of Russellville, and A. H. Carmichael, of Tuscumbia, for appellant.

It was error to permit the witness Cleere to testify as to statements made by defendant to deceased while she was lying on the ground, and statements made by her to him, and statements made by defendant to others several minutes after the killing. 67 South. 620; 15 Ala. App. 121, 72 South. 599; 7 Ala. App. 43, 61 South. 54; 183 Ala. 10, 62 South. 864; 2 Ala. App. 38, 56 South. 89. The defendant should have been allowed to show that deceased used morphine, and that she was under the influence of the drug on the occasion of the killing. 144 Ala. 42, 40 South. 312. The letters written by defendant to deceased were inadmissible. 71 Ala. 385; 81 Ala. 577, 2 South. 854, 60 Am. Rep. 193; 8 Ala. App. 33, 62 South. 477; 143 Ala. 28, 38 South. 919; 22 C. J. 158; 10 R. C. L. 925; 8 R. C. L. 188; 7 Ala. 652, 42 Am. Dec. 605.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

In a trial of homicide, the state may show as a part of the res gestæ what accused did immediately after he shot the deceased. 150 Ala. 10, 43 South. 343; 177 Ala. 12, 59 South. 171; 141 Ala. 20, 37 South. 448. Declarations of accused while at the scene of the killing, with his pistol in his hand and in the presence of deceased, were admissible as of the res gestæ without preliminary proof that they were voluntary. 147 Ala. 10, 41 South. 992; 162 Ala. 5, 50 South. 215; 60 Ala. 19; 136 Ala. 9, 34 South. 191. The letters from defendant to deceased were admissible on cross-examination of defendant. 12 Mich. Ala. Dig. 1212; 118 Ala. 653; 97 Ala. 37, 12 South. 164, 38 Am. St. Rep. 145; 143 Ala. 13, 39 South. 406; 94 Ala. 35, 10 South. 667; 40 Ala. 698; 17 Ala. 618; 88 Ala. 31, 7 South. 104.

SAYRE, J. [1] Defendant killed Martha Henderson, and in due course was convicted of murder in the first degree. The state's evidence furnished ample support for the finding of the jury. Defendant pleaded "not guilty," and specially "not guilty by reason of insanity" (Code, § 7176), and it will be considered for the purposes of this appeal that there was evidence tending to support each of these pleas. Many exceptions were reserved at the trial and have been considered as required by the statute; but able counsel have briefed the case for defendant, and there is no need for the specific treatment of questions other than those which they have deemed worthy of discussion. Generally with reference to the plea of not guilty by reason of insanity we think we may with propriety say that, while there was a modicum of evidence tending to show that defendant was not in his normal mind at the time of the killing no verdict in agreement with the great weight of the evidence could have found anything more to the point than a species of emotional insanity, moral obliquity in fact, which has no recognition in the law of this state as an excuse for crime. Boswell v. State, 63 Ala. 307, 35 Am. Rep. 20; Parsons v. State, 81 Ala. 577, 2 South. 854.

[2] The greater part of the record in this cause consists of a transcription of numerous letters written by defendant to deceased. These letters were admitted in evidence over defendant's objection and exception. There was no denial of their authenticity, and, while many of them are without date, it is clear from their contents and the testimony of defendant that they were written during the two years (approximately) of defendant's illicit relations with deceased. The later and most significant of them appear to have been written only a few days before the killing. These letters show defendant's deep infatuation with deceased, a woman of easy virtue. Defendant had a wife and children, but in these letters he protests his love for deceased, shows his willingness and his efforts to divorce his wife, against whom he had no ground of divorce save that she stood in the way of his relations with deceased, and, in order to maintain those relations, avows his readiness to abandon wife, children, relatives, friends, business—everything. At the same time, as these letters show, repeatedly and with increasing frequency, he laid his mis-

fortunes, his profound depression, his moral and financial bankruptcy at the door of deceased. Defendant had frequently met and dallied amorously with deceased in surrounding cities and towns, but these letters show that, as her demands upon him grew, defendant increasingly desired to break away, at least to keep his relations with her under cover, and became more and more anxious lest she come to Russellville, where he lived, as she threatened to do. Evidence aliunde went to show that defendant in his turn threatened to take the life of deceased if she came to Russellville, and then, after she came and while she lay upon the pavement in front of his place of business suffering from his mortal wounds, begging that she be not allowed to die, he reminded her that he told her he would kill her if she came there. In our opinion these letters alone, as declarations by defendant, and especially when read in connection with the other evidence, tended to incriminate defendant, for that they tended to show a motive, and a purpose in pursuance of that motive, to take the life of deceased. They certainly operated to injure defendant in the eyes of the jury, but they tended also, and that legitimately, to create a probability of his guilt, and for that reason were admissible.

[3] In criminal causes the conduct and declarations of the defendant on other occasions are relevant whenever such conduct and declarations tend to shed light on his motives and intention in doing the act complained of. Jones on Evidence, §§ 142, 143. Such is the general effect of these letters. It may be conceded, perhaps, that passages irrelevant and immaterial to the issues might have been segregated, but such passages would have been colorless and innocuous, and, for that reason doubtless, no discriminations were attempted by counsel for defendant. We think no error can be predicated of the admission of these letters. Hudson v. State, 61 Ala. 333; Phillips v. State, 68 Ala. 469; Jones v. State, 181 Ala. 63, 61 South. 434.

[4] Annie Box, a witness for the state, testified that she was one of the telephone operators at Russellville; that a few minutes before the killing she set up a connection between defendant and deceased at the request of the latter; that she knew their voices, and on the occasion in question heard this much of the conversation between them: "He said he wanted her to lay low, and he said, 'Well, come on over here.'" Defendant was then at his place of business, and deceased was at a drug store a short distance away. In a minute or two, as the evidence went to prove, deceased crossed the street to defendant's store, and then, as she was about to enter the store, defendant shot and killed her. The evidence in question was properly admitted on the theory, in part, on which the letters were admitted, and in other part on the theory that it tended to show preparation for the killing.

[5] There was further objection to the testimony of this witness on the ground that the statute approved August 26, 1915 (Acts, p. 321), made it a criminal offense for any owner, manager, operator or employee of any telegraph or telephone line in this state to publish or communicate in any way whatsoever the contents of any message without the consent of either the sender or receiver thereof. The proviso contained in section 3½ of the act, viz. "Provided that nothing contained herein shall apply when such information is called for by any writ or summons from any court," though not expressed in language of fitness or aptitude, was intended to obviate just such objections as that here in question; in other words, the purpose of the body of the statute is to prevent the voluntary, unnecessary, and officious disclosure of communications which it is the clear duty of the transmitting agencies to treat as confidential, and the purpose of the proviso is to leave the courts free to require evidence of communications when relevant and material to litigated issues. There was no error.

[6, 7] Witnesses Mrs. Armistead and Ben Turbyfill were permitted to testify that shortly after midday of the day of the killing—which occurred about 6:30 p. m.—defendant and deceased were driving on a road north of the town in a single-seated automobile, and that defendant was guiding the machine with one hand, and had the other suggestively on the person of deceased. The argument for error in this connection is that, since the killing was not denied, and because at the time of the admission of this ruling there had been no evidence under the insanity plea, this evidence was calculated and designed unfairly to prejudice defendant in the minds of the jury. That it did not help the defense must be admitted; but its relevancy is another story. This evidence tended to establish the relations between the parties and was relevant for that purpose. Some other questions put to these witnesses, or one of them, as, to state probably the most injurious, whether defendant at that time had a wife and children in Russellville, were unnecessary, for the facts elicited were abundantly proved otherwise and were not denied, but were admissible nevertheless as going to show the true inwardness of the relations between defendant and deceased, and error was not committed in receiving them, though cumulative merely and unnecessary. Miller v. State, 130 Ala. 14, 30 South. 379.

[8-10] George Cleere and other witnesses for the state were permitted to testify to words that passed between defendant and deceased as the latter lay upon the sidewalk after the shooting and during the few minutes that elapsed before she lost consciousness. The witness Cleere testified:

"Well, to the best of my knowledge, the first statement I heard Mr. Hall make was, 'I told you not to come over here or I would kill you.' The woman was calling for a doctor, and said, 'Fred, for God's sake get a doctor and don't let me die.' She repeated this four or five or six times."

This testimony was properly admitted as tending to show defendant's animus and hostility, toward deceased, if for no other reason. Smith v. State, 183 Ala. 24, 25, 62 South. 864; Carter v. State, 205 Ala. 460, 88 South. 571. To another question the witness answered:

"Mr. Hall [defendant] or Mr. Richardson, one, said not to bring her in the store. I believe it was Mr. Hall. He said, 'My wife is coming down,'" and that defendant said, "Get her away from here before my folks get down here."

Most likely this testimony was admitted on the same theory, that is, as illustrative of defendant's mental attitude towards deceased, and, if so, error cannot be affirmed of the ruling. Moreover, the remarks reproduced by this witness (and the others who testify to the same effect) were made immediately after the shooting, while deceased was lying upon the sidewalk and defendant standing by with the fatal weapon in his hand, and were admissible as of the res gestæ of the homicidal act. Williams v. State, 147 Ala. 24, 41 South. 992. In Smith v. State, supra, it was held that the statement reproduced against defendant was not of the res gestæ, the testimony being admitted on another exclusive ground, to wit, that it showed animus; but an examination of that case will show a much greater remoteness from the actual killing, as distinguished from its incidents, than in the present case.

[11] The court, on the state's motion, excluded the testimony of the witness Ramsey to the effect that he heard the deceased say in St. Louis some days before the killing, after he had informed her, in answer to her inquiries, that defendant was in business in Russellville, that she was going to Russellville and make him "dig up." This testimony was later excluded on the ground that it had not been communicated to defendant. Defendant contends that the language attributed to deceased constituted a threat, and should, for that reason, have been allowed to remain with the jury. We doubt that any reasonable construction of what deceased said could make of it a threat of violence. But, however that may be, and assuming that evidence of uncommunicated threats might have been admissible at a later stage of the case (Roberts v. State, 68 Ala. 156), there was no error in the court's ruling for the reason that at the time no evidence tending to support the plea of self-

defense had been offered (Amos v. State, 96 Ala. 120, 11 South. 424).

Counsel for defendant argue that there was error in the exclusion of testimony to the effect that some time before the killing deceased went to defendant's store disguised and with a bucket on her arm in which was a pistol; but we do not find in the record that the court sustained objection to any question designed to elicit the fact that when deceased went to defendant's store she had a pistol in the bucket. In other respects the question asked for immaterial matter. However, the evidence without dispute did show that deceased on one occasion, before the killing, went to defendant's store disguised and with a bucket on her arm.

[12] We do not find reversible error in the court's refusal to allow evidence that deceased habitually used morphine, or even that she was drunk on morphine at the time of the killing. This proposed evidence was irrelevant to the issues joined and offered no excuse for taking the life of deceased.

We have reached the conclusion that the judgment in this cause should be affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.