# Johnson v. The State.

## Murder.

(Decided June 30, 1913.    63 South. 163.)

1. *Convicts; Life; Statute; Construction.*—Under section 7089, Code 1907, a person convicted of murder in the first degree and sentenced to be hanged, which sentence was commuted by the Governor to life imprisonment, is a "convict sentenced to imprisonment for life," since the commutation simply substituted a less for a greater punishment, and the judgment had the same legal effect after commutation, as if the jury had fixed his punishment at life imprisonment instead of death.

2. *Same.*—In a prosecution of a convict for murder after the introduction of a copy of the judgment sentencing defendant to death, it was proper to admit in evidence the statement of commutation of punishment to life imprisonment.

3. *Same; Failure to Record.*—The failure of the circuit clerk to record the statement of commutation, as is required by section 7513, Code 1907, did not affect its legality, validity, or admissibility in evidence.

4. *Homicide; Indictment; Charging Instrument.*—An indictment properly charging murder by means of a certain instrumentality is

sufficient if it specifies the instrumentality by its generally accepted name; hence, an indictment charging that defendant killed deceased with a pick is sufficient, although it does not specify the particular kind of pick.

5. *Same; Evidence.*—Where the prosecution was of a convict for the murder of another convict, it was competent for a convict witness to state that as he ran by the defendant the defendant asked him where he was going, that he replied that he was going to tell the Cap'n about the killing of Josh, and that the defendant said: "If you go down and tell him, I will kill you when you come back," as it was part of the res gestæ, and occurred while defendant was still in the act of murder. Such statements were also admissible as illustrating the frame of mind of defendant at the time of the homicide, and as tending to show that he knew he was not acting in self-defense. .

6. *Same; Opinion Evidence.*—Where the theory of the state was that deceased became overcome by powder smoke in a mine, and laid down, and upon his refusal to get up when defendant ordered him to do so, defendant killed him with a pick, it was harmless error to permit a witness to state that the smoke in the mine was powder smoke as it was immaterial what kind of smoke overcame the deceased.

7. *Same.*—In a prosecution under section 7089, Code 1907, the fact that it was necessary, in order for the state to show that defendant was a life convict, to first show that he was convicted and sentenced to death, followed by commutation to life imprisonment, could not have been prejudicial to defendant, as the fact that the sentence was commuted tended to show that the crime was attended by palliating circumstances.

8. *Evidence; Convicts; Weight.*—Although as a general rule, the testimony of convicts is not regarded as being reliable, yet such testimony will authorize and sustain a conviction for crime of the highest magnitude, although uncorroborated.

APPEAL from Bibb Circuit Court.

Heard before Hon. B. M. MILLER.

Jackson Johnson was convicted of murder in the first degree, and he appeals. Affirmed.

JEROME T. FULLER, for appellant. The indictment was demurrable for failure to sufficiently describe the instrument by which the killing was accomplished.— *Williams v. State,* 130 Ala. 31. The state is proceeding under section 7089, Code 1907, and the court was in error in admitting the judgment of conviction, and sentenced to death, and also the fact of commutation to

life imprisonment.—*Walker v. State,* 96 Ala. 55; *Brown v. State,* 47 Ala. 47; *McMurray v. State,* 6 Ala. 342; *Gilmore v. State,* 99 Ala. 158. A material variation in the allegation and the proof is fatal to a conviction.— *Stone v. State,* 115 Ala. 121; *Lynch v. State,* 89 Ala. 20. The commutation was not effective because not recorded by the clerk as required by section 7313, Code 1907, and hence, was not admissible in evidence.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The indictment was entirely sufficient.—*Sims v. State,* 58 South. 379; *Smith v. State,* 142 Ala. 14; *King v. State,* 137 Ala. 47. The commutation of the sentence was properly filed in the office of the Secretary of State, and a certified copy thereof was competent as evidence.—Secs. 3983, 3985 and 4002, Code 1907; *State v. Wilson,* 123 Ala.! 259. It was not error to show these facts by defendant himself.—*Deal v. State,* 136 Ala. 52. Under the terms of the indictment, the proper penalty was imposed.— 156 N. Y. 541.

DE GRAFFENRIED, J.—The defendant, Jack Johnson, was on March 2, 1910, convicted in the circuit court of Bibb county of the offense of murder in the first degree, and, as punishment for such crime, was by said court sentenced to be hanged. He appealed from that judgment to this court; but this court affirmed the judgment of the Bibb county circuit court. Thereupon, on the 12th day of February, 1911, the Governor of Alabama, to whom an appeal was made for executive clemency, commuted the defendant's sentence to life imprisonment. The effect of the commutation by the chief executive was to change the judgment of the court, and the commutation abrogated the sentence of death im-

posed by the court, and substituted in its stead life imprisonment in the penitentiary. The judgment, after commutation, had the same identical legal effect as if the jury, by their verdict, had declared that the defendant, as punishment for said offense, should suffer imprisonment in the penitentiary for the term of his natural life, and there had followed the verdict a judgment of the court sentencing the defendant to life imprisonment in the penitentiary. While the defendant owed his life to the clemency of the Governor, his imprisonment for life in the penitentiary,. after the commutation by the Governor, was referable to the judgment of guilt which was pronounced against him by the circuit court of Bibb county on March 2, 1910, and we can see no reason why the defendant is not *now* "a convict sentenced to imprisonment for life for murder in the first degree from the circuit court of Bibb county, Alabama, to wit, on March 2, 1910," as he is, in the quoted language of the indictment in this case, described to be. Commutation does not affect the judgment of conviction. It simply substitutes a less for a greater legal punishment, operating as a reaffirmation of the judgment of guilt, and may well be referred to the judgment of conviction rather than to the act of the pardoning power. In other words, this defendant is a life convict under a judgment of conviction for murder in the first degree which was pronounced upon him on the above-named day, and he may well be so designated, although, but for executive clemency, he would have been hanged.

For the above reason we are of the opinion that the court properly admitted evidence showing the commutation of the defendant's sentence to death by hanging to life imprisonment, and for the same reason we are of the opinion that there was, on the subject now under

discussion, no material variance between the allega-
tions of the indictment and the proof. The judgment of
the Bibb county circuit court sentencing the defend-
ant to death on March 2, 1910, taken in connection with
the certified copy of the judgment of this court, ren-
dered on July 6, 1910, affirming the said judgment of
the said circuit court, and the commutation of the de-
fendant's sentence made by the Governor of Alabama
on February 12, 1911, and duly attested by the Secre-
tary of State, sufficiently sustained the allegations of
the indictment as to the conviction and sentence of
the defendant to the penitentiary for life.

The mere fact that the clerk of the circuit court of
Bibb county failed to record, as required by section
7513 of the Code, the statement of commutation in no
way affected the validity or legality of the commuta-
tion or its admissibility as evidence, and the statement
of commutation introduced by the state was not sub-
ject to any of the grounds of objection interposed to it
by the defendant.

(1) It appears that the defendant, after said commu-
tation and while at work for the state in a coal mine as
a life convict, killed Josh Grimes, another convict, by
striking him with a miner's pick. The evidence for the
state tended to show that Josh Grimes was lying down
in the mine, and that the defendant, without provoca-
tion on the part of Grimes, struck him on the side of
the head, fracturing the skull and probably killing him
at the first blow; that, after the defendant had struck
Grimes on the head as above stated, he continued to
strike him with the pick on his breast, and that Grimes
was dead before the defendant ceased beating him. The
evidence for the defendant tended to show that Grimes
undertook to kill the defendant, and that the defend-
ant killed Grimes in self-defense.

(2) Section 7089 of the Code of 1907 provides that: "Any convict sentenced to imprisonment for life, who commits murder in the first degree, while such sentence remains in force against him, must, on conviction, suffer death." The defendant, for the murder of Grimes, was indicted under the said quoted section, was regularly tried, convicted, and sentenced to death, and from that judgment he appeals.

(3) The indictment charges that "the defendant * * * did unlawfully and with malice aforethought kill Josh Grimes by striking him with a pick," etc. The defendant demurred to the indictment, because it failed to allege what sort of "pick" was used by the defendant in killing the deceased. Says the defendant's counsel: "There are many kinds of picks, and, as we are aware, quite a large per cent. of picks are not considered weapons, and could not be used to advantage in committing murder." There are many kinds of knives, sticks, and stones, some of which are not considered weapons; but under the laws of this state indictments which charge murder with a "knife," "stick," or "stone," without further particularizing the instrument, are sufficient. An indictment which properly charges murder by means of a certain instrumentality is sufficient if it specifies the instrumentality by its generally accepted name.—*King v. State,* 137 Ala. 47, 34 South. 683; *Smith v. State,* 142 Ala. 14, 39 South. 329. The indictment was not subject to the defendant's demurrer.

(4) Walker Gray, a witness for the state, testified in part as follows: "Then he (meaning the defendant) reached down and got a pick and struck him (meaning deceased) right back on the head, and Josh (the deceased) laid over on his face, and Jack (the defendant) pulled him over and commenced lamming him

on the breast with the end of the pick. I then ran by him (defendant) while he was striking Josh, or just as he struck him, and defendant said to me, 'Where are you going?' I told him I was going 'to tell Captain about you killing Josh.' " The witness was then asked by the solicitor the following question: "Tell the jury what Jack Johnson (the defendant) said right then." The witness answered: "He said, 'If you go down there and tell him, I will kill you when you come back here.' "

The defendant seasonably objected to the quoted question and the answer thereto, and the action of the trial court in permitting the question and in admitting the answer as evidence, it is claimed by the defendant, constituted error, for which the judgment in this case should be reversed. The above-quoted conversation between the defendant and the witness seems to have occurred, or at least, to have commenced, while the defendant was still in the *act* of murder. When it commenced—and the entire conversation occupied, necessarily, an exceedingly short time—the defendant was *still* striking the deceased with the pick. It was therefore, in truth, a part of the transaction itself, and its admissibility is sustained on that ground.

In addition to this, the entire situation of the parties and the conversation itself show that the statements alleged to have been made by the defendant to the witness were made *voluntarily*. The quoted words of the defendant certainly have some tendency to illustrate the *frame* of mind of the defendant at the time of the homicide, and they tend to show that the defendant then knew that he was not acting in self-defense, but that, in killing the deceased, he knew that he was doing a wrong, and they were also for that purpose admissible.—*Pate v. State*, 150 Ala. 10, 43 South. 343; *Fleming v. State*, 150 Ala. 19, 43 South. 219; *Young v. State*, 149

Ala. 16, 43 South. 100; *Williams v. State;* 147 Ala. 10, 41 South. 992; *King v. State,* 40 Ala. 314.

(5) We are also of the opinion that the court committed no error in allowing a witness to say, in answer to the question of the solicitor, "What kind of smoke was that?" that the smoke was powder smoke. The state claims that in discharging some powder in the mine smoke was thereby created; that the deceased, being at the point of the smoke, became temporarily affected thereby, and that he laid down; that the defendant ordered the deceased to get up, and upon his refusal to do so killed him with a pick. It really did not matter what sort of smoke overcame the deceased, and for that reason no injury could possibly have been done the defendant by the admission of this testimony. In fact we are inclined to think that this testimony tended to the advantage of the defendant. His testimony tended to show that the deceased was not lying down when he was killed, that the deceased was, at the time of his death, in the act of striking the defendant, and that there was not only no powder smoke in the mine at that time, viz., 9 o'clock in the morning, but that no powder was, at any time, discharged in the mine except at *night.* In other words, through this testimony the defendant was enabled to develop a conflict in the testimony.

(6) We can, after a painstaking examination of this record, find no substantial reason why the judgment in this case should be reversed. The defendant, it is true, was convicted upon the testimony of convicts; but their testimony was corroborated in material ways by witnesses who had never been convicted of crime, and whose characters were in no way impeached.

It is also true that it was during the progress of the trial developed that the defendant, for a previous murder, had been, by a valid judgment of a court of compe-

tent jurisdiction, sentenced to death, and that the death sentence so imposed upon him had been by the Governor commuted to life imprisonment. The fact that the defendant was a life convict was, of course, competent, and the fact that the state, to show this, was required to show a judgment for murder in the first degree imposing the death penalty, followed by the commutation to which we have above referred, could not have prejudiced the defendant in the eyes of the jury. The fact that *commutation* of a sentence is granted by the chief executive has some tendency, at least, to lead the mind to the conclusion that the commission of the crime was attended with palliating circumstances rendering the previous greater penalty inequitable and unjust. It is not claimed that the jury which tried the case was not impartial. They were simply, when they passed upon the defendant's case, dealing with a man who, by a previous sentence of a court, had been cut out of society and condemned to a life of penal servitude.

Much of the testimony came from sources which the law does not regard as reliable; but that character of testimony, even when not corroborated, is declared by the law to be sufficient to authorize and sustain convictions of crimes of the highest magnitude. An impartial jury has declared that the defendant is guilty, and he is, under the judgment of the court, now under sentence of death. No good reason for a reversal of that judgment having been shown, it follows that the judgment of the court below must be affirmed.

Affirmed. All the Justices concur.