## FREIHAGE v. UNITED STATES.
### No. 6592.

Circuit Court of Appeals, Ninth Circuit.

Feb. 1, 1932.

Louis K. Pratt, of Fairbanks, Alaska, for appellant.

Julien A. Hurley, U. S. Atty., of Fairbanks, Alaska.

Before WILBUR and SAWTELLE, Circuit Judges, and McCORMICK, District Judge.

McCORMICK, District Judge.

John Freihage was indicted in the Fourth Division of the District Court of the United States for the Territory of Alaska for the crime of murder. The jury returned a verdict finding him not guilty of murder, but guilty of manslaughter. Upon such verdict the court pronounced judgment and sentenced him to serve a term of twenty years' imprisonment in the federal penitentiary. This appeal is from the judgment of conviction.

The record tends to show that the defendant in the court below had been for several years living out of wedlock with the deceased, Mrs. Big Joe, a full-blooded Indian woman. They had frequently quarreled and fought. Both drank intoxicants excessively. On the night of September 18, 1930, the defendant brought home two bottles of whisky. He and the deceased drank some of this liquor and thereafter became involved in an altercation, during which the woman received wounds, bruises, and injuries from the effects of which she succumbed six days later. There was no eyewitness to the encounter. It appears that a little girl about 4 years old was in the house at the time of the affray, but she was too young to testify, and gave no evidence at the trial.

The prosecution's evidence respecting the fatal conflict consisted entirely of an alleged

dying declaration of Mrs. Big Joe. It showed that defendant struck deceased with a large clamp, thereby producing a rupture of her left kidney and causing her to bleed to death. The defendant testified that Mrs. Big Joe, while under the influence of liquor, attacked him in an unlighted room, struck him with a flash-light over the eye, and bit him severely on the arm, and that he shoved her away from him solely to prevent her further injuring him, whereupon she fell against a bed and upon the floor with considerable force. He denied having struck her with any weapon or clamp.

There are seven assignments of errors. It is primarily contended that the indictment does not describe with sufficient particularity and definiteness the means or weapon by which the mortal injury was inflicted. The charging part of the indictment reads:

"The said John Freihage on the 18th day of September, A. D., 1930, in the Fourth Division of the Territory of Alaska, then and there being, did then and there purposely and of deliberate and premeditated malice assault and mortally wound Mrs. Big Joe by striking and beating her upon the head and body with a clamp, from which said wound so inflicted upon the said Mrs. Big Joe by the said John Freihage, the said Mrs. Big Joe did then and there languish and continue to languish until the 24th day of September, A. D., 1930, and then died in said Fourth Division of the Territory of Alaska. And so the said John Freihage did then and there purposely and of deliberate and premeditated malice kill and murder the said Mrs. Big Joe by the means and in the manner hereinabove alleged."

Section 2149 of the Code of Criminal Procedure (Compiled Laws of Alaska, 1913) provides: "That the manner of stating the act constituting the crime, as set forth hereinafter, is sufficient in all cases where the forms there given are applicable, and in other cases forms may be used as nearly similar as the nature of the case will permit."

And section 2149A thereof provides that an indictment for murder may be substantially in the following form: "Purposely and of deliberate and premeditated malice killed C D by (shooting him with a gun or pistol, or by administering to him poison, or by pushing him into the water, whereby he was drowned, or by throwing him from the window of a building, or by means unknown to the grand jury, as the case may be)."

The general description of the weapon alleged to have been used by the accused, to wit, "a clamp," was sufficient to meet the requirements of these statutes of Alaska; and the failure to amplify or more particularly designate the character of the clamp did not render the indictment insufficient or defective in any substantial aspect. The means or weapon alleged to have been used to commit the homicidal act in this case was not any of those expressly named or stated in the Alaska statutes, and was not unknown to the grand jury that indicted the accused. The dimensions and specification of the size of the clamp were probative and evidentiary facts; and it is necessary to aver only ultimate facts in an indictment. This was adequately done in the pleading under consideration. The defendant made no objection to the indictment until after the verdict in the court below. The charge was sufficient, especially in the absence of demurrer available to the accused under chapter 10 of the Alaska Code of Criminal Procedure (section 2197 et seq.). An analogous situation is found in Johnson v. State, 183 Ala. 79, 63 So. 163, 164, where the court said:

"The indictment charges that 'the defendant * * * did unlawfully and with malice aforethought kill Josh Grimes by striking him with a pick,' etc. The defendant demurred to the indictment, because it failed to allege what sort of 'pick' was used by the defendant in killing the deceased. Says the defendant's counsel: 'There are many kinds of picks, and, as we are aware, quite a large per cent. of picks are not considered weapons, and could not be used to advantage in committing murder.' There are many kinds of knives, sticks, and stones, some of which are not considered weapons; but under the laws of this state indictments which charge murder with a 'knife,' 'stick,' or 'stone,' without further particularizing the instrument, are sufficient. An indictment which properly charges murder by means of a certain instrumentality is sufficient if it specifies the instrumentality by its generally accepted name. King v. State, 137 Ala. 47, 34 So. 683; Smith v. State, 142 Ala. 14, 39 So. 329. The indictment was not subject to the defendant's demurrer."

And again, in Beaver v. State, 63 Tex. Cr. R. 581, 142 S. W. 11, 12, the Court of Criminal Appeals of Texas, discussing a similar contention, used the following language:

"Motion was made to set aside the indictment because the description of the instrument or means by which deceased was killed is insufficient. The indictment charges that the instrument used by appellant was a piece of pipe. Appellant cites, among others, the

case of Drye v. State, 14 Tex. App. 185. We are of opinion that this case does not support his contention. The indictment in the Drye Case charged that the accused did, with malice aforethought, kill and murder C. H. Lund, setting out no weapon or means by which the homicide was brought about, just simply the broad allegation that he did kill and murder Lund. The court held that indictment fatally defective, and correctly so. The court said:

" 'An indictment for murder "must set forth the means by which the life was extinguished; hence, if it was by a weapon, it must say what the weapon was, or allege it to be unknown to the grand jury. If it describes the killing as done in a way requiring no weapon, for example, by the use of the hands, none other need be mentioned. The particulars of the weapon, as that it was of such a length and breadth, need not be given; to say, for example, that it was 'a certain wooden stick' will suffice. And if stones were used their number need not be stated. A 'loaded pistol' will do." 2 Bish. Crim. Proc. (3d Ed.) § 514; State v. Williams, 36 Tex. 352; Dwyer v. State, 12 Tex. App. 535; Peterson v. State, 12 Tex. App. 650.' To the same effect is the case of State v. Smith, 61 N. C. 340; Rex v. O'Brien, 2 C. & K. 115; State v. Owen, 5 N. C. 452, 4 Am. Dec. 571; Wharton on Homicide, § 565; Bowens v. State, 106 Ga. 760, 32 S. E. 666.

"The Bowens Case, supra, holds that an indictment, charging the homicide to have been committed by beating deceased with a piece of iron, need not specifically set forth the size or weight thereof. We are of opinion that the indictment sufficiently describes the instrument, and there was no error in overruling the demurrers."

In support of his contention that the indictment is insufficient, and because the statutes of Alaska relating to indictments for murder are the same as the statutes of the state of Oregon in such matters, appellant cites the case of State v. Weston, 102 Or. 102, 201 P. 1083, 1087, where the Oregon Supreme Court in the course of the opinion said:

"In every case where the evidence before the grand jury establishes the manner of slaying the deceased, the indictment should so allege."

The indictment in the Weston Case charged that the defendant purposely, maliciously, and feloniously killed and murdered deceased by means unknown to the grand jury. The objection urged against its sufficiency was that the act charged was not stated with such a degree of certainty as to enable defendant to make a defense. Answering this contention, the court held, in accordance with the well-settled rule, that such an allegation is sufficient where the circumstances of the case will not admit of greater certainty. It thus clearly appears that the Oregon court's statement that the indictment should contain the manner of slaying, if known, cannot be considered as controlling authority in the case before us.

Error is assigned in the ruling of the court allowing in evidence, over the objection of the defendant, a writing called a "dying declaration" of Mrs. Big Joe, the deceased, and in sending it out with the jury for use in the jury room during the deliberations of the jury. This writing reads as follows:

"United States of America, Territory of Alaska, Nulato Precinct.—ss.

"Ruby, Alaska, September 24, 1930.

"I, Mrs. Big Joe, of Ruby, Alaska, first being duly sworn, depose and say:

"That on the eighteenth day of September while in the house used as a dwelling by myself in the town of Ruby, Alaska, Jack Freihage came into the house and did beat me severely with a clamp, the kind that carpenters use in bending boards, made of iron or steel. That in one hand he had a bottle of white mule whiskey when he came in the house. That I was in good health before he beat me up. When he came in the house he locked the door so I could not get out. That if I die it will be from the beating given me by Jack Freihage. That the bruises on my body were all caused by him when he beat me. That I have been bleeding from the vagina continuously since this beating although I have not menstruated for five or six years previously. That he has since threatened to beat me again if I said anything to anyone about this.

Her
"Mrs. Big X Joe
Mark

"Signed in the presence of

"Bernadette Evans

"Thomas H. Long

"Subscribed and sworn to before me at Ruby, Alaska, this 24th day of September, 1930.

"William N. Growden,

"U. S. Commissioner and Ex-Officio Justice of the Peace."

Before the writing was received in evidence, and before the jury was permitted to see it, six witnesses had been called and tes-

tified concerning the physical and mental condition and appearance of Mrs. Big Joe at and prior to the time that the writing was prepared. These witnesses also gave evidence as to her acts, conduct, and declarations before and at the time she made her mark upon the writing at about 2 p. m. on September 24. All of them testified that Mrs. Big Joe was at these times in a very enfeebled but conscious condition; that she had lost a great deal of blood from a severe and profuse hemorrhage from the left kidney, from which hemorrhage she was then suffering and from which she had been continuously suffering since September 19, a few hours after the fatal encounter with the defendant, and from the effects of which she died within seven hours from the time of imposing her mark upon the writing. During the afternoon she had told all of the six persons that she was going to die and that she thought she was going to die. She also at such times used the expression to them, "If I die," etc., the same way as such verbiage appears in the writing. The writing was prepared and executed in the following manner: In the early afternoon of the day of her death, the deceased was suffering intense pain and constantly growing weaker from loss of blood. She had told two nieces who were attending her that she thought she was going to die, and she sent one of them for Tom Long, a deputy United States marshal, stating to the girl that she wanted to make a statement to Long before she died. Long came to the bedside of the dying woman. She was then in great agony, and she repeated to him her belief of impending death and told him that she had sent for him as she wanted to tell him how the defendant had "beat her up." She further said to him, "If I die I want you to know how Jack killed me," and she showed Long the bruises on her body. Long then sent for William Growden, the United States commissioner at Ruby, Alaska, who came to the house, and to whom Mrs. Big Joe reiterated substantially what she had previously told Long as to her conviction of impending death. Growden wrote down her statement in long hand, took it to his office, copied it on a typewriter and returned to the bedside of Mrs. Big Joe with the typewritten matter. It was again read to the deceased very carefully, and, to make sure that she fully understood it, an Indian woman friend who was present interpreted it to the bedridden woman. She said it was correct and that it was what she wanted to sign. She was so weak that she had to be propped up in bed in order to sign the statement, and she had to be assisted in making her mark at the foot of the writing. She was then in extremis but conscious. She then swore to the truthfulness of the statement before Mr. Growden. Within a few hours she lapsed into unconsciousness and remained so for an hour before her death at 10 p. m.

■■ The only objection urged to the writing in the court below was that it was "incompetent testimony," and that its incompetency as evidence was shown upon its face. We think the court was correct in overruling the objection of the defendant to the reception of the writing in evidence and in permitting the jury to take it to the jury room upon retirement for deliberation. The proper foundation had been sufficiently laid for its introduction and for its consideration by the jury. It is true that the situation was not unequivocal; but the fact that the expression "If I die" was used by the declarant in the writing, and had been previously orally stated by her to the six persons present, was not sufficient to exclude the evidence from the jury. The trial judge was satisfied by the evidence that the deceased had no hope of life when the declaration was made and executed by her, and, having determined in the first instance the competency of the evidence, the court acted properly in submitting it to the jury for their ultimate determination as to its value, weight, and effect. It was for the jury to say, under the circumstances disclosed by the record in this case, whether the use of the word "if" by the declarant manifested doubt or uncertainty in her mind as to her impending death, or whether the use of that word was tantamount to the statement "When I die," etc., as one of the six witnesses had testified she had stated just prior to the preparation and execution of the written declaration.

In Cantrell v. State, 117 Ark. 233, 174 S. W. 521, 523, the Supreme Court of Arkansas, in discussing a similar circumstance, said:

"We think the court committed no error in admitting the proof of the dying declaration. The admissibility of such evidence is a preliminary question to be determined by the court, after a consideration of the proof of the conditions which make such evidence admissible. * * *

"As has been said, no question would be made as to the competency of this evidence but for the fact that deceased, in speaking of his death, said: 'If I am going to die, I might as well die first as last.' The conjunction 'if' is frequently employed where

132

doubt is entertained, but its use is not conclusive of the existence of doubt. Its dictionary meaning is:

"'In case that; granting, allowing or supposing that; on condition that; used in introducing a conditional sentence or clause; as I will go if you do; if he is there, I shall see him.' Century Dictionary.

"Proof of other statements made by deceased contemporaneously with the above tend to show that deceased did not entertain the hope of recovery. In passing upon this question it was proper for the court not to limit its consideration to the single sentence, but to take into account all of the circumstances, including everything that was said on that subject."

And in Regina v. Sparham, et al., 25 U. C. C. P. 143, the Canadian Court of Common Pleas approved a dying declaration that contained the phrase "If I die in this sickness" with the following language:

"We think the mere use of the words, 'If I die,' do not by themselves defeat and render nugatory all the emphatic declarations of abandonment of all hope.

"It is a form of expression very proper to be noticed and commented on in such a case. Had the declarant been otherwise silent as to her opinion of her state, or her danger, such an expression would have weighed heavily against the admission of her statements.

"Had the expression been, 'If I die as I firmly believe I shall, then A. B. will be my murderer,' there could be little doubt as to the true meaning of the phrase, and the hypothetical form would be quite consistent with the existence of the firm belief in death as an inevitable event.

"As already remarked, I see no reason why the prosecution could not legally use the second declaration.

"We are not aware of there being any definite rule as to the form of these statements—whether they must be in narrative form, or in answer to questions put; or whether the statements may not be made at different times, and one be referred to, or explained, or qualified by a subsequent statement.

"The cardinal point is, that the Court must be satisfied that whatever statement is admitted in evidence must be shown by credible testimony to have been made in full belief of approaching death, with an abandonment of all hope of life."

■■ While we think that the court below committed no error in overruling the objection that was made to the admission into evidence of the dying declaration of Mrs. Big Joe, we deem it advisable, because of an improper instruction which necessitates a new trial, to direct attention to certain portions of the writing wherein the state of health and physical condition of Mrs. Big Joe prior to the fatal encounter is described, and particularly to the last sentence of the writing wherein the following statement appears: "That he has since threatened to beat me again if I said anything to any one about this." It has been clearly established by the authorities that statements of facts and circumstances not immediately connected with the act of killing, but relating to previous and subsequent, independent, and distinct transactions, are not admissible as dying declarations. The statements should be limited to the res gestæ; that is, only to the transactions causing the death, with such continuing statements and conduct as may throw light upon it. See 1 R. C. L. 534 et seq., and cases cited under sections 77 and 78 therein.

■ The defendant assigns as misconduct of the attorney for the government the exhibition before the jury of an Indian child, Emily Big Joe, the adopted child of the deceased, whom the evidence showed to have been present at the time of the fatal encounter. The child was merely produced before the jury, and was not called as a witness; it being considered that she was too young to testify. It is a sufficient answer to this assignment of error to say that the record discloses no objection or exception by the defendant to this procedure. Moreover, the record shows that the child appeared before the grand jury, but was unable on account of her tender years to give any credible evidence, though her name appeared indorsed upon the indictment. Under these circumstances, no prejudicial error is shown in this regard.

Error is assigned in the refusal of the court to include in its general charge to the jury defendant's special instruction No. 3 on the subject of dying declarations. The proffered instruction reads:

"The Court instructs the Jury that in homicide cases, such as this one, the prosecution may introduce in evidence a statement or declaration of the deceased as to the cause of the injury, who inflicted it and the circumstances surrounding the same, when such statement or declaration is made by the in-

jured party at a time when he or she has abandoned all hope of recovery and firmly believes that he or she is about to speedily die from the effects of such injury.

"Applying this rule to the evidence, if you should find and believe from the evidence that the Mrs. Big Joe named in the indictment, on the day of her death, to-wit: Sept. 24, 1930, made what are called dying declarations, partly oral and partly in writing, at a time when she firmly believed that she inevitably had to die and that recovery was impossible and that death would come to her speedily, in which declarations she accused the defendant of inflicting upon her a mortal hurt or injury in a manner and by means described by her in such declarations, then such declarations would become and having been shown in evidence in the case by the government, are, evidence in the case, but such evidence is considered in law as secondary and to be received and weighed by the jury with caution.

"If all the testimony in the case leaves it in doubt whether such declarations were made under a sense of impending death as above explained or if contradictory statements of the deceased as to what caused the injury and the manner of its infliction have been developed by the testimony of the defendant, then the question of whether such dying declarations are evidence at all is a question of fact for the jury and if you should find and believe from all the testimony that at the time of making such declarations and statements the deceased did not believe that she had to die immediately and had some or any hope of recovery or that such declarations were false, then it would be your duty to reject them altogether."

The court below charged the jury in writing before the argument, pursuant to section 2246 of the Code of Criminal Procedure (Compiled Laws of Alaska, 1913, p. 726). At the conclusion of the instructions defendant's counsel noted and was allowed the following exception:

"The defendant also excepts to the refusal of the court to give and read to the jury his special instruction No. 3 upon the subject of dying declarations, in which it is set forth that where such dying declarations are not clearly shown to be under an impending sense of death, or contradictory statements have been made by a declarant, it then becomes a question of fact for the jury as to whether the supposed dying declaration is evidence at all of any kind, and under such circumstances give them the right to reject it altogether."

Considering the gravity of the offense with which the defendant was accused, and the dire consequences that his conviction might entail, we believe the requested instruction, although in part erroneous, with the exception noted and allowed, was sufficient to impose upon the court the duty of properly and appropriately explaining to the jury the legal status of the evidence of the dying declaration of Mrs. Big Joe. Armstrong v. United States, 41 F.(2d) 162 (C. C. A. 9). Not only was the defendant's request to charge, as contained in proffered instruction No. 3, declined, but the court gave the following instructions on the subject of dying declarations:

"You are instructed that in prosecutions for murder, the dying statements or declarations of the person with whose murder the defendant stands charged, when material and made under the sense of impending death, are admissible in evidence. Such declarations are admissible in evidence when the party making them is at the point of death, when every hope of the world is gone, and when every motive for falsehood is silenced and the mind is induced by the most powerful considerations to speak the truth. This situation, in law, is considered as creating an obligation equal to that which is imposed by an oath administered in a court of justice."

"You are instructed that the statement of the deceased, Mrs. Big Joe, introduced in evidence in this case and marked plaintiff's exhibit A, was admitted under such rule of law, but the truth or falsity of such statement is a matter for you to say under the same tests as apply to other witnesses called before you, considering all of the circumstances in evidence surrounding the said statement."

"You are instructed that the statement of the said Mrs. Big Joe admitted as a dying declaration should be considered by you as such. You are not bound to believe it merely because it is a dying declaration, but you will give it that weight which you think it is justly entitled to receive, if any, when considered in connection with all the other facts and circumstances in the case, and for the purpose of weighing and considering such statement you have a right to take into consideration all the facts and circumstances under which it was made. You should also take into consideration the fact that neither

the defendant nor his attorney was present or had the opportunity of cross examining the deceased and that you have not had an opportunity to observe her, Mrs. Big Joe's, manner and appearance while making said statement. You should also take into consideration the state of mind and physical condition, as shown by the evidence, in which the deceased was when the said statement was made. A dying declaration is admissible from the necessities of the case and should be considered carefully and cautiously by you in an honest effort to give it such weight as you find it is justly entitled to receive and you are instructed that you should not belittle nor enlarge its force and effect simply because it is a dying statement."

"You are instructed that dying statements or declarations may be impeached or discredited in the same manner as the testimony of any witness appearing before you, and under the rules of law applicable to impeachment of witnesses as instructed in instruction numbered 17 hereinbefore set forth."

The giving of these instructions under the circumstances in this case was prejudicial error. That part of requested instruction No. 3, reading as follows, is not a correct statement of law:

"If all the testimony in the case leaves it in doubt whether such declarations were made under a sense of impending death as above explained, or if contradictory statements of the deceased as to what caused the injury and the manner of its infliction have been developed by the testimony of the defendant, then the question of whether such dying declarations are evidence at all is a question of fact for the jury, and if you should find and believe from all the testimony that at the time of making such declarations and statements the deceased did not believe that she had to die immediately and had some or any hope of recovery, or that such declarations were false, then it would be your duty to reject them altogether."

A juror would not be justified in rejecting or disregarding an alleged dying declaration because he may entertain a fanciful or imaginary doubt as to whether such declaration was made under a sense of impending death. He could disregard or reject such declaration if or when he entertained a reasonable and substantial doubt as to it having been made in extremis and under a sense of impending death. See cases cited under section 3047 of Randall's Instructions to Juries, p. 3437 et seq. Moreover, to charge the jury, "if contradictory statements of the deceased as to what caused the injury and the manner of its infliction have been developed by the testimony of the defendant, then the question of whether such dying declarations are evidence at all is a question of fact for the jury," would be clear error.

However, by the instructions given, the court erroneously withdrew from the jury its unquestionable right under the facts and circumstances of this case to ultimately pass upon, not only the weight and effect to be given to the dying declarations, but also upon their competency as any evidence whatever. The jury in this case was to the contrary pointedly instructed that "the statement of the said Mrs. Big Joe admitted as a dying declaration should be considered by you as such." This, we believe, was a substitution of the opinion and decision of the trial judge upon a vital factual issue, that under the circumstances of the case and in the light of the seriousness of the crime with which the accused was charged was a question for the jury as well as the trial judge. The context and other parts of the instructions on the subject of dying declarations, or the instructions as a whole, do not remedy or cure the error in the quoted excerpt. There are designations of the elements of dying declarations and of rules that the jury should apply in the determination of the weight and effect thereof, but we can find nothing that removes the plain and succinct instruction that the statement of Mrs. Big Joe admitted as a dying declaration should be considered by the jury as competent evidence and that it was only its weight, truth, or falsity, when considered with all of the other facts and circumstances in the case, that the jury had the right to consider.

The prejudicial effect of the instruction given is obvious. The case of the government, as far as inculpatory acts of the defendant are concerned, depends entirely upon the dying declarations of Mrs. Big Joe, and their importance as vehicles of proof against Freihage cannot be overestimated. The expression "If I die," etc., always employed by the declarant and found in the writing, was sufficient to justify two reasonable deductions as to whether the declarations containing that expression were made in extremis and under a sense of impending death, and the jury should have been allowed to pass upon this crucial question and should have been given a clear and positive instruction by the court that the final decision in this regard rested with the jury.

In State v. Doris, 51 Or. 136, 94 P. 44, 47, 16 L. R. A. (N. S.) 660, the Supreme Court of Oregon, in discussing the relative rights and duties of trial judge and jury in considering dying declarations in homicide cases, said:

"Where but one deduction can reasonably be drawn from the testimony, and it is to the effect that the declaration was made in extremis, under a sense of impending death, the court must admit the declaration; and its admission is conclusive upon the jury, which, under such circumstances, should be so instructed. But, if the predicate for the dying declaration appears doubtful and of such character that men of average reason and prudence might draw different conclusions therefrom, the inquiry then becomes one of fact, and must finally be submitted to the jury."

To instruct the jury that it should consider the statement under consideration to have been made under the momentus and potent influence of impending death was an error of such serious consequence that it calls for a reversal of the judgment of conviction in this case and the granting of a new trial of the accused. The language of Judge Dietrich in the decision of this court in Armstrong v. United States, supra, 41 F.(2d) 162, 163, is strikingly applicable. He there said:

"But, considering the gravity of the offense with which the defendant was charged, the request was sufficient to impose upon the court the duty of appropriately explaining to the jury the status of such evidence. Indeed, in some jurisdictions it seems to be held incumbent on the court of its own motion to give a proper instruction. See Pearson v. State, 143 Tenn. 385, 226 S. W. 538, 540, 541. Such evidence is exceptional, and the ordinary citizen, sitting as a juror, cannot be supposed to have knowledge of the reason of necessity underlying its reception, or to be quick to recognize its infirmities; and he may not fully appreciate the importance to a defendant of the usual right of cross-examination, the protection of which is denied him in such a case."

The remaining assignments of error relate to the action of the court in overruling defendant's motion for a new trial and in imposing a sentence of twenty years' imprisonment in the federal penitentiary. Inasmuch as a new trial will be ordered, it is unnecessary to discuss these assignments. It suffices at this time to refer to the decisions of this court in Courtnay v. King, 220 F.

112, and Clements v. United States, 297 F. 206, as establishing the rule that an order of a federal court denying a motion for a new trial is not assignable as error.

For the prejudicial error committed in this case in instructions concerning the right and power of the jury in considering evidence relating to dying declarations of deceased, Mrs. Big Joe, the judgment herein is reversed, with instructions to grant a new trial.